ROBERT E. PERSHES (RP2601)
PERKINS PERSHES, PLLC
ATTORNEYS FOR PLAINTIFFS
3839 NW BOCA RATON BOULEVARD SUITE 200
BOCA RATON, FLORIDA 33431
TELEPHONE: (561)-910-8923
E-MAIL: RPERSHES@PERKINSPERSHES.COM

JOHN N. TASOLIDES (JT2446)
LOCAL ATTORNEY FOR PLAINTIFFS
6800 JERICHO TURNPIKE, SUITE 110W
SYOSSET, NY 11753
PHONE: (516) 682-8220
FAX:    (516) 921-1223
E-MAIL: TASOLAW@PRODIGY.NET

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**SOLFIRE GROUP, LLC,**
**SOLFIRE GEAR, LLC,**
**SHANE SABEL, Individually,**
**CANDACE SABEL, Individually,**
**CHRISTOPHER PESAVENTO, Individually,**
**KRISTOPHER BRAATEN, Individually,**
**GREGORY BARBA, Individually, and**
**KATHERINE BARBA, Individually,**

      **Plaintiffs**      **COMPLAINT**
                  **Civ. Action No. 1:14-cv-3054-MKB-JMA**

                  **PLAINTIFFS DEMAND JURY TRIAL**

**v.**

**SOLFIRE ENTERPRISES, LLC,**
**SOLFIRE CLOTHING COMPANY, LLC,**
**BRENDAN MURPHY, Individually**
**JOHN ZIEGLER, Individually**

      **Defendants.**
-----------------------------------------------------------/

## AMENDED COMPLAINT

   Plaintiffs, Solfire Group, LLC (hereinafter "Solfire Group LLC"), Solfire Gear, LLC,

(hereinafter "Solfire Gear"), Shane Sabel, Candace Sabel, Christopher Pesavento, Kristopher

Braaten, Gregory Barba, and Katherine Barba( collectively the "members" of Solfire Group ) (all plaintiffs collectively, "Plaintiffs"), by and through undersigned counsel, allege as follows:

## **PARTIES**

1.      Solfire Group, LLC is a Florida limited liability company.

2.      Solfire Gear is a Florida limited liability company.

3.      At all times hereinafter mentioned, Plaintiff, Shane Sabel ("S. Sabel") was and still is a member of Solfire Group and Solfire Gear.

4.      At all times hereinafter mentioned, Plaintiff, Candace Sabel ("C. Sable") was and still is a member of Solfire Group and Solfire Gear.

5.      At all times hereinafter mentioned, Plaintiff, Christopher Pesavento ("Pesavento") was and still is a member of Solfire Group and Solfire Gear.

6.      At all times hereinafter mentioned, Plaintiff, Kristopher Braaten ("Braaten") was and still is a member of Solfire Group and Solfire Gear.

7.      At all times hereinafter mentioned, Plaintiff, Gregory Barba ("G. Barba") was and still is a member of Solfire Group and Solfire Gear.

8.      At all times hereinafter mentioned, Plaintiff, Katherine Barba ("K. Barba") was and still is a member of Solfire Group and Solfire Gear.

9.      Upon information and belief, Defendant, Solfire Enterprises, LLC ("Solfire Enterprises"), at all times hereinafter mentioned, is a limited liability company, duly organized and existing under, and by virtue of, the laws of the State of New York and having its principal place of business in Brooklyn, New York.

10.      Upon information and belief, Defendant, Solfire Clothing Company, LLC ("Solfire Clothing"), at all times hereinafter mentioned, is a limited liability company, duly

organized and existing under, and by virtue of, the laws of the State of New York and having its principal place of business in Brooklyn, New York.

11.    Upon information and belief, Defendant, Brendan Murphy ("Murphy") is sui juris and at all operative times, was a member of Solfire Group LLC, Solfire Gear, Solfire Enterprises and Solfire Clothing. Murphy having breached his obligations to the Plaintiffs, constructively abandoned his position as a member and managing member acting on behalf of Plaintiffs, relocated to New York.

12.    Upon information and belief, Murphy is a resident of New York City, New York and a managing member of Solfire Enterprises.

13.    Upon information and belief, Murphy is a resident of New York City, New York and a managing member of Solfire Clothing.

14.    Upon information and belief, Defendant, John Ziegler ("Ziegler"), is sui juris, was and still is a resident of Brooklyn, New York, and is the managing member of Solfire Enterprises.

15.    Upon information and belief, Defendant, John Ziegler ("Ziegler"), is sui juris, was and still is a resident of Brooklyn, New York, and is the managing member of Solfire Clothing.

## JURISDICTION AND VENUE

16.    This court has federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. § § 1331 and 1338(a) & (b) as this case involves claims for trademark infringement and false designation of origin pursuant to Section 32(a) of the Lanham Act (15 U.S.C. § 1114 (a))and 15 U.S.C. § 1125(a).

17.    This court has supplemental jurisdiction over the related state law claims herein pursuant to 28 U.S.C. §§1367(a).

18.     This court has jurisdiction over the claims herein pursuant to 28 U.S.C. §1332(a)(1).  There is complete diversity of citizenship between the Plaintiffs and Defendants and the damages sought exceed $75,000.00.

19.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because Defendants are conducting business in this judicial district and, on information and belief, a substantial part of the events giving rise to the claim occurred in this district.

## **FACTUAL ALLEGATIONS**

20.     S. Sabel, C. Sabel, Pesavento, Braaten, G. Barba, and K. Barba are all members, of Solfire Group, LLC and Solfire Gear ( collectively "Solfire Group") which, together manufactured, distributed, and sold tennis apparel under the SOLFIRE® trademark.

21.     S. Sabel founded Solfire Group, LLC along with Murphy in 2008.

22.     S. Sabel provided the initial investment of money into Solfire Group while Murphy assigned future art sales revenue.

23.     S. Sabel as a professional tennis instructor was integral to the formation and growth of the tennis apparel company.

24.     In or about 2009, C. Sabel invested money into Solfire Group, LLC.

25.     C. Sabel's ownership interest, along with S. Sabel's ownership interest, gives them a combined majority ownership interest in Solfire Group, LLC.

26.     Murphy was a minority member of Solfire Group, LLC, and agreed to act as one of the managing members for Solfire Group, LLC to handle the day to day operations of the business.

27.     Solfire Group's business was originally started as a Delaware company named Solfire Group Holdings LLC, but in January 2010 Murphy rolled all assets and interests of the

members of the Delaware company, in the same proportions, into two new Florida companies he formed being Solfire Group, LLC and Solfire Gear which he then in operation combined into a single limited liability company which was referred to collectively as Solfire (collectively, "Solfire Group") which operated as one limited liability company entity with Murphy, continuing to act as one of the managing members. Murphy ran both companies as one entity as he and S. Sabel sought out investors for Solfire Group.

28.     Solfire Group solicited and obtained additional investments of $25,000.00 each from Plaintiffs Kristopher Braaten and Gregory Barba.

29.     Solfire Group further solicited and obtained an investment of $10,000.00 from Plaintiff Katherine Barba.

30.     Solfire Group further solicited and obtained an investment of $25,000.00 from Plaintiff  Christopher Pesavento.

31.     Solfire Group manufactured, distributed, and sold tennis apparel marketed under the SOLFIRE® trademark.  Solfire Group, through S. Sabel's status as a professional tennis instructor, had established and was expanding relationships with other professional tennis players for endorsements as well as seeking to sponsor events to promote its trademarked apparel. The SOLFIRE® trademark and goodwill were and are Solfire Group's primary and most significant asset.

32.     On March 9, 2010, Solfire Group, to protect its trademark, filed for trademark registration with the United States Patent and Trademark Office ("USPTO") and on June 14, 2011 the USPTO granted a trademark registration to Solfire Group as the rightful owner of the trademark Registration Number 3,979,719 for the trademark "SOLFIRE®" (the "Mark").

33.     Murphy, without the knowledge or authorization of Plaintiffs, failed to file the annual reports of Solfire Group, LLC and Solfire Gear, LLC, allowed various trademark

applications to go abandoned, and failed to attend to administrative requirements of Solfire Group, LLC and Solfire Gear, LLC.

34. On January 15, 2013, Murphy, without authority or knowledge of the Plaintiffs, formed Solfire Enterprises which on information and belief was used to receive unauthorized transfer of assets and Mark of Solfire Group.

35. Upon information and belief on January 15, 2013, Murphy, without authority or knowledge of the Plaintiffs, formed Solfire Clothing which on information and belief was used to receive unauthorized transfer of assets and Mark of Solfire Group.

36. Murphy, unilaterally and without knowledge of the Plaintiffs or obtaining consent from any of the members of Solfire Group, on or about August 25, 2013, assigned the Mark from Solfire Group to Zeigler.

37. On or about August 29, 2013, Murphy, allegedly acting on behalf of Solfire Group but without authority or knowledge of the Plaintiffs, recorded an Assignment dated August 25, 2013 in the United States Patent and Trademark Office ("USPTO") purporting to assign the Mark from Solfire Group to Zeigler.

38. On or about August 29, 2013 Zeigler recorded an assignment of United States Trademark Registration No. 3,979,719 with the USPTO purporting to assign the Mark from Zeigler to Solfire Enterprises.

39. On or about August 29, 2013, Solfire Enterprises filed Application Number 86051487 with the USPTO to register another "SOLFIRE" word mark, also claiming the prior registration No. 3979719.

40. Murphy, unilaterally and without knowledge of the Plaintiffs or obtaining consent from any of the members of Solfire Group, assigned the Mark from Solfire Group to Zeigler.

41.     Zeigler, unilaterally and without knowledge of the Plaintiffs or obtaining consent from any of the members of Solfire Group, assigned the Mark from himself to Solfire Enterprises and using Solfire Clothing to manufacture and/or sell clothing bearing the Mark.

42.     Upon information and belief, Ziegler and Murphy executed and recorded the assignments, knowing that, collectively, Plaintiffs account for the majority ownership interest in Solfire Group, Solfire Group is the true owner of the Mark, and knowing that they had no authority to execute those assignments.

43.     Neither Murphy nor Ziegler paid any consideration to any of the Plaintiffs and neither Murphy nor Ziegler had legal authorization to execute these assignments.

44.     Murphy and Ziegler, together and individually, have misappropriated the Mark and the business of Solfire Group for their own personal benefit and that of Solfire Enterprises, and Solfire Clothing, to the detriment of Plaintiffs, damaging them by not compensating the Solfire Group members and Solfire Group for use of the Mark, value of the Mark, and value of the business taken, as well as lost investment and lost business opportunity.

45.     Upon information and belief, Solfire Enterprises and Solfire Clothing currently have endorsements with professional tennis players, sponsors tennis tournaments to utilize the Mark, and own a manufacturing warehouse in New York City for their tennis apparel which utilizes the Solfire® Mark.

46.     Solfire Enterprises and Solfire Clothing sells their tennis apparel online through a vendor, Tennis Warehouse and through direct sales utilizing the Solfire® Mark.

47.     Upon information and belief, Murphy, as a minority member of Solfire, and without any authority, misappropriated and usurped the trade name and trademark of Solfire, along with the Mark goodwill and associated Solfire Group business, initially providing it as collateral to Ziegler in exchange for $4 million in cash, which was solely paid to Murphy or an

entity at Murphy's direction which was only for his benefit and ultimately when Murphy failed to make payments to Zeigler the business and the Mark were all assigned to Ziegler or an entity at his direction.

48.     Upon information and belief, Solfire Enterprises and Solfire Clothing have developed assets worth millions of dollars from utilizing the Mark and Solfire business assets.

49.     Neither Solfire Group nor Plaintiffs have ever realized any payment or revenues from the corporate opportunities, assets and Mark usurped by Defendants.

50.     Neither Solfire Group nor Plaintiffs have ever received any consideration for the use of the Mark by Defendants.

51.     Despite assurances by both Murphy and Ziegler that Plaintiffs have interests in Solfire Enterprises, Defendants have denied the Plaintiffs any and all membership rights nor provided any compensation.

52.     Defendants have refused to provide Plaintiffs with any information or provide an accounting as requested previously to Defendants and as hereby requested by Plaintiffs.


**FIRST CAUSE OF ACTION**
**(Declaratory Judgment)**
**28 U.S.C. § 2201**

53.     Plaintiffs sue Defendants, re-allege and re-aver paragraphs 1-52 as though fully set forth herein.

54.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

55.     Based on the facts alleged, there is a substantial continuing controversy between Plaintiffs and Defendants.

56.     Solfire Enterprises has asserted ownership of the Mark in derogation of Solfire Group's rights as the rightful owner of the Mark.

57.     Murphy and Zeigler, without any authorization from Solfire Group, directed the filing and recording of purported assignments of the Mark, which resulted in Solfire Enterprises becoming the record owner of the Mark with the United States Patent and Trademark Office.

58.     Solfire Group is the rightful owner of the Mark and did not and has not authorized the assignment, sale, encumbrance, transfer or other use of the Mark by Defendants.

59.     Solfire Enterprises has indicated it has no intention of resolving the dispute with Solfire Group and the continuation of the dispute may be reasonably inferred.

60.     The continuing controversy is real and immediate and creates a definite threat of current and future injury given that Solfire has been deprived of the opportunity to conduct its business due to the usurpation of the business and Mark by Defendants and the confusion caused by the dispute in ownership of the Mark.


**SECOND CAUSE OF ACTION**
**(Infringement and Counterfeiting of Registered Trademark)**
**(15 U.S.C. § 1114 Lanham Act)**

61.     Solfire Group sues Defendants, re-alleges and re-avers paragraphs 1-52 as though fully set forth at length herein.

62.     This is a claim for trademark infringement and counterfeiting arising under 15 U.S.C. § 1114.

63.     The Mark was originally filed in the USPTO and March 9, 2010. The application was for registration on the Principal Register pursuant to 15 U.S.C. §1052.

64.     On May 3, 2011, by office action the examiner at the USPTO found that after a search of the USPTO's data base of registered and pending marks they had found no conflicting marks that would bar registration on the Principal Register pursuant to the Trademark Act Section 2(d) ( 15 U.S.C.§1052(d)). Thus the mark was approved for registration on the Principal

9

Register, however, the mark application was amended, on information and belief, by direction of Murphy to request that the registration be that of the Supplemental Register.

65.     The mark "SOLFIRE" is a "made up" term, having no meaning and is thereby is an arbitrary or fanciful mark, the strongest type of marks, inherently distinctive and entitled to protection under common law the mark being sufficiently distinctive to distinguish the goods from the goods of others.   Additionally, the mark acquired distinctiveness or "secondary meaning".  By either measure the mark would and should have been registered on the Principal Register but for the actions of Murphy. Murphy's actions were not authorized by any member of the Solfire Group.

66.     On August 29, 2013 Defendant Solfire Enterprises at Zeigler's direction filed an application for registration of the mark "SOLFIRE", for classification including articles of clothing, on the Principal Register as an intent to use application, notwithstanding that they were in fact currently using the Mark on clothing in that same classification as the Solfire Group's use. They did not notify the USPTO of the Solfire Group's usage but claimed priority based upon the false assignment.

67.     The application of Solfire Enterprises received its Notice of Allowance, i.e. approval, on March 18, 2014, indicating that the Mark was eligible to be registered on the Principal Register as a distinctive mark, but for the need to file a Statement of Use of the Mark by the applicant. Rather than file such statement, although Defendants are all actively using the Mark, Defendants have filed a request for extension of time to file such statement.

68.     Solfire Group is the rightful owner of a prior, valid and enforceable registered trademark for its Mark, and made prior use of such Mark for its goods.

69.     Defendants have used in commerce, without permission of Plaintiffs or Solfire Group, reproductions, counterfeits, copies or colorable imitations of the Mark and products in

connection with the manufacturing, distributing, selling, offering for sale, advertising, and/or promoting of Defendants' tennis apparel and other products, and implying in its advertising that it is affiliated with or authorized by Solfire Group to distribute or sell their products.

70. Without permission of Plaintiffs or Solfire Group, Defendants are using, reproducing, counterfeiting, copying, or colorable imitating of the Mark and products and apply such reproductions, counterfeits, copies, or colorable imitations to merchandise, labels, signs, packages or advertisement, intended to be used in commerce, upon or in connection with the manufacturing, distributing, selling, offering for sale, advertising, and/or promoting of goods or services on or in connection with counterfeit goods which such use is likely to cause confusion, or to cause mistake, or to deceive. The reproduction by defendants of the SOLFIRE® Mark is identical to the registered mark.

71. Plaintiffs and Solfire Group are informed and believe, and on that basis allege, that the activities of Defendants complained of herein constitutes willful and intentional use of Mark, the goods made and sold by Defendants are counterfeit product and are infringements of the Mark, and that Defendants did so with the intent to trade upon Solfire Group's reputation and goodwill causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' counterfeit products are associated with, sponsored by, originated from, or are approved by Plaintiffs and Solfire Group, when in truth and fact they are not.

72. Plaintiffs and Solfire Group are informed and believe, and on that basis allege, that Defendants had actual knowledge of Solfire Group's ownership and prior use of the Mark, and without the consent of Plaintiffs or Solfire Group, have willfully violated 15 U.S.C. § 1114, et al.

73.     Upon information and belief, Defendants' infringement has been willful and deliberate.

74.     Upon information and belief Zeigler is the controlling member of Solfire Enterprises and Solfire Clothing, who knew, or should have known, that the Mark was owned by Solfire Group and directed the infringing activities of Solfire Enterprises and Solfire Clothing.

75.     Defendants' aforementioned acts have injured Solfire Group and damaged Solfire Group in an amount to be determined at trial. By their actions, Defendants have irreparably injured Solfire Group. Such irreparable injury will continue unless Defendants are permanently enjoined by this Court from further violations of Solfire Group's rights, for which Solfire Group and Plaintiffs have no adequate remedy at law.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin)**
**(15 U.S.C. § 1125)**

76.     Solfire Group sues Defendants, re-allege and re-aver paragraphs 1-52, 63-75 as though fully set forth at length herein.

77.     This is a claim for false designation of origin and false or misleading description of fact, or false or misleading representation of fact arising under 15 U.S.C. § 1125(a).

78.     Defendants have created a false designation of origin by using in commerce, without Plaintiffs or Solfire Group's permission, marks identical to the Mark in connection with the advertisement, offering for sale, and/or sale of Defendants' counterfeit products.

79.     Defendants have created false or misleading description of fact or false or misleading representation of fact by implying in its advertising that it is or was affiliated with or authorized by Solfire Group to distribute or sell its products.

80. Solfire Group is informed and believes, and on that basis alleges, that Defendants did so with the intent to trade upon Solfire Group's reputation and goodwill causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' counterfeit products are associated with, sponsored by or approved by Solfire Group, when in truth and fact they are not.

81. Solfire Group is informed and believes, and on that basis alleges, that Defendants had actual knowledge of Solfire Group's ownership and prior use of the Mark, and without the consent of Solfire Group, have willfully violated 15 U.S.C. § 1125(a).

82. Upon information and belief, Defendants' false designation of origin has been willful and deliberate.

83. Defendants' aforementioned acts have injured Solfire Group and damaged Solfire Group in an amount to be determined at trial.

84. By their actions, Defendants have irreparably injured Solfire Group. Such irreparable injury will continue until and unless Defendants are permanently enjoined by this Court from further violation of Solfire Group's rights, for which Solfire Group has no adequate remedy at law.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty

85. Plaintiffs re-allege and re-aver paragraphs 1-52, 63-75 as though fully set forth at length herein.

86. Murphy, as a member and managing member of Solfire Group owed a fiduciary duty to Plaintiffs, to exercise loyalty, good faith, due care, candor, and diligence in the management and administration of the affairs of Solfire Group.

87. Solfire Group was organized under Florida law which provides that the internal affairs of Solfire Group are governed by the law of Florida, which includes fiduciary duty claims of members of Solfire Group. The managing members in a Florida company owe fiduciary duties of due care, good faith and loyalty to the company and the members. The members of Solfire Group were owed a fiduciary duty by Murphy, independent of any agreement between the members.

88. Apart from the terms of the oral agreement between the members, the parties by appointing Murphy and Murphy having accepted appointment as a managing member, created a relationship of higher trust than would arise from their oral agreement alone and as created by applicable statute, to allow the members of Solfire Group to have a cause of action for breach of fiduciary duty independent from the contractual duties.

89. Murphy breached his duty to the members of the Solfire Group, to include but not limited to, dealing adversely with the members of Solfire Group, misappropriating assets of Solfire Group, usurping business opportunities belonging to Solfire Group, dealing with Zeigler to the detriment and adversely to the interests of the members of Solfire Group

90. Murphy breached and continues to breach his fiduciary duties to Plaintiffs causing damage to Plaintiffs, by, *inter alia*, engaging in a deliberate course of action designed to misappropriate company assets, including the Mark, to Ziegler, Solfire Enterprises and Solfire Clothing without the consent or authorization of Plaintiffs.

91. Murphy's conduct has proximately caused, and will continue to cause, Plaintiffs to suffer substantial damages.

92. Plaintiffs have been directly and substantially injured by reason of Murphy's breaches of fiduciary duty and his intentional and reckless disregard of Plaintiffs' rights to the Mark.

93.     By reason of Murphy's foregoing conduct, he is liable to Plaintiffs for damages to be determined at trial.

94.     Further, Plaintiffs are entitled to injunctive relief, disgorgement of profits stemming from Murphy's breaches of fiduciary duty, actual, compensatory damages, and any other remedies provided by applicable law.

## FIFTH CAUSE OF ACTION
### Breach of Contract

95.     Pled in addition to, and/or in the alternative to, the prior causes of action. Plaintiffs re-allege and re-aver paragraphs 1-52, as though fully set forth at length herein.

96.     The members of Solfire Group entered into an oral agreement as part of the operation of the Solfire Group which provided in part that revenue obtained by sale of the company or its assets would be applied first to authorized obligations of the company, then to payment of loans made to the company by investors, then repayment of investments made into the company, then to investors based upon their proportionate share of ownership in the company.

97.     Further, the members agreed that interest in the Solfire Group and transfer of Solfire Assets could not be done without approval of a majority of the ownership interest in the Solfire Group.

98.     Upon information and belief Murphy breached his contract with the members by entering into a transaction with Zeigler, to have Zeigler loan four million dollars to Murphy for an interest in the Solfire Group and collateralized such loan with rights of ownership to the Mark

held by the Solfire Group and assets of Solfire Group, without any authorization from the Solfire Group members.

99.     Murphy further breached his contractual agreement by failing to distribute the funds received from Zeigler to the Solfire Group members pursuant to the agreement. Rather than distribute such revenue, Murphy retained such funds for his own uses, depriving the members of their portion of the funds. The retention of the funds by Murphy was not authorized by the members of Solfire Group.

100.    As a direct and proximate result of the breach by Murphy the members of Solfire Group have been substantially damaged and continue to be damages in an amount to be determined at trial.


## SIXTH CAUSE OF ACTION
### Aiding and Abetting Breach of Fiduciary Duty

101.    Plaintiffs re-allege and re-aver paragraphs 1-52, 63-75, and 86-94 as though fully set forth at length herein.

102.    Upon information and belief Zeigler was fully aware of Murphy's position within the Solfire Group and his duty to the members of Solfire Group and that Murphy did not have authority to transfer ownership or encumber assets of Solfire Group.

103.    Murphy as a managing member had a fiduciary duty to the Solfire Group Members.

104.    Zeigler knowingly induced and participated in Murphy's breach of his fiduciary duties to Plaintiffs.

105.    Zeigler participated with Murphy in the wrongful assignment of the Mark and Solfire Group assets without obtaining the consent or authorization from Plaintiffs, with

knowledge of and in reckless disregard of, the rights and interests of the members of Solfire Group in the Solfire Group assets and Mark.

106.    Ziegler's conduct has proximately caused, and will continue to cause, the members of Solfire Group and Solfire Group to suffer substantial damages.

107.    Plaintiffs have been directly and substantially injured by reason of Ziegler's aiding and abetting Murphy in the breaches of his fiduciary duties and his intentional and reckless disregard of Plaintiffs' rights to the Mark and Solfire assets.

108.    By reason of Ziegler's foregoing conduct, Ziegler's liable to Plaintiffs for damages to be determined at trial.

109.    Further, Plaintiffs are entitled to injunctive relief, profits stemming from Ziegler's aiding and abetting breaches of fiduciary duty, actual, compensatory, and any other remedies provided by applicable law.

## SEVENTH CAUSE OF ACTION
## Tortious Interference with Contract

110.    Pled in addition to, and/or in the alternative to, the prior causes of action. Plaintiffs re-allege and re-aver paragraphs 1-52, 96-100 as though fully set forth at length herein.

111.    Upon information and belief Ziegler knew Murphy was the managing member of Solfire Group, and that Solfire Group was the owner of the Mark.

112.    Upon information and belief Ziegler was aware that Murphy had contractual obligations to the other members of the Solfire Group under which the members of Solfire Group have legal rights.

113.    Upon information and belief Ziegler offered to loan millions of dollars to Murphy to induce Murphy to transfer an interest in Solfire Group and/or an alleged interest in an entity

17

created by Murphy, without authority from Solfire Group, called Solfire Art, and to secure such alleged loan with assets of Solfire Group including the Mark. This was done with the intention of transferring the business assets and Mark of Solfire Group to Ziegler.

114.     Upon information and belief Murphy kept the funds paid by Zeigler, did not repay Zeigler and assisted in transferring the assets and Mark of Solfire Group to Zeigler, depriving the members of Solfire Group of their assets and Mark.

115.     The actions by Zeigler were an intentional procurement of the contract breach, and an unjustified interference with the relationship between Murphy and the members of Solfire Group, resulting in Murphy not performing his obligations to the members of the Solfire Group and the members of the Solfire Group being damaged.

116.     By reason of Zeigler's foregoing conduct, Zeigler's liable to Plaintiffs for damages to be determined at trial.


## EIGHT CAUSE OF ACTION
### Unjust Enrichment


117.     Plaintiffs re-allege and re-aver paragraphs 1-52, 63-75 as though fully set forth at length herein.

118.     Solfire Group and its members conferred a benefit upon Zeigler and Murphy through the alleged transfer of rights to interest in Solfire Group and unauthorized transfer of the Mark to Zeigler, which conferred a benefit upon Zeigler and the transfer of funds wrongfully to Murphy, which conferred a benefit upon Murphy. Zeigler and Murphy have voluntarily accepted and retained the benefits, which are not rightfully their property and it would be inequitable for

them to keep such property and it only reflect a small portion of the value of the Mark and business assets taken.

119.    By reason of Zeigler's foregoing conduct, Zeigler's liable to Plaintiffs for damages to be determined at trial.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs demand judgment and pray for relief against Defendants as follows:

(1)  Entry of a declaratory judgment in their favor and against Defendants, finding, along with such other and further relief as the Court may deem just, proper, and equitable under the circumstances, that Solfire Group is the rightful owner of the Mark and directing the USPTO to transfer title and registration to Solfire Group and cancel the trademark registrations or applications by Solfire Enterprises to Solfire;

(2) Restraining and enjoining Defendants, permanently and preliminarily during the pendency of this action, together with Defendants' officers, agents, members, employees, successors and assigns, and all those in privity and/or acting in concert with them, from advertising or otherwise using the Mark, or any confusingly similar name or mark, or from selling or otherwise distributing goods bearing the Mark, or any other confusingly similar name or mark, including Internet Websites owned, operated or controlled by Defendants, without Plaintiffs' permission, or from passing off Defendants' goods or services as those of Plaintiffs;

(3) Awarding Plaintiffs their monetary damages, including actual damages sustained as a result of Defendants' infringement of the Mark and other unlawful conduct set forth herein,

together with an accounting of Defendants' profits, as provided in 15 U.S.C. § 1117, all in amounts to be determined at trial;

(4) Directing Defendants to surrender for destruction all signs, goods, labels, advertising material and other items containing or including the Mark without authorization of Plaintiffs;

(5) Awarding Plaintiffs statutory damages against Defendants for their infringement, and for willful used of a counterfeit Mark in an amount to be determined at trial;

(6) Awarding Plaintiffs any profits realized by Defendants from Defendants' infringing activities and Defendants' breaches of fiduciary duties to Plaintiffs.

(7) Awarding Plaintiffs their costs and reasonable attorneys' fees in this action;

(8) Awarding Plaintiffs damages of three times Defendants' profits or damages, as provided in 15 U.S.C. § 1117 (a) and/or (b) together with a reasonable attorney's fee, prejudgment and post judgment interest;

(9) Destruction of all counterfeit goods, and

(9) Granting Plaintiffs such other and further relief as the Court may deem proper and just.


## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury for all causes and issues so triable.


Dated: Boca Raton, Florida
      November 17, 2014

                                      Respectfully Submitted,


                                      By: /s/Robert E. Pershes_____
                                        Robert E. Pershes, Esq. (RP2601)
                                        Attorney for Plaintiffs

Perkins Pershes, LLC
3839 NW Boca Raton Boulevard
Suite 200
Boca Raton, Florida 33431
rpershes@perkinspershes.com
Phone:   (561) 910-8923
Fax:      (561) 423-3989

/s/ John N. Tasolides_____
John N. Tasolides (JT2446)
Local Attorney for Plaintiffs
6800 Jericho Turnpike, Suite 110W
Syosset, NY 11753
tasolaw@prodigy.net
Phone: (516) 682-8220
Fax:     (516) 921-1223

E:\shared documents\Civil\Solfire\Pleadings\Solfire -Complaint5-9-14.docx